Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ORLANDO RODRÍGUEZ PÉREZ, LUZ AGOSTO CASIANO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, ORLANDO ANDRÉS RODRÍGUEZ AGOSTO Y OTROS <br><br> *Peticionarios* <br><br> v. <br><br> CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, COMPAÑÍAS DE SEGUROS X, Y Y Z, JOHN DOE Y JANE ROE <br><br> *Recurridos* | KLCE202401363 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina <br><br> Caso Núm.: CA2022CV01766 (407) <br><br> Sobre: Impericia Médica |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de febrero de 2025.

Comparecen ante nos, el Sr. Orlando Rodríguez Pérez, la Sra. Luz Agosto Casiano y la Sociedad Legal de Gananciales compuesta por ambos, Orlando Andrés Rodríguez Agosto y Anna Lucía Rodríguez Agosto (en conjunto, "Sr. Rodríguez" o "Peticionario") mediante un recurso de *certiorari* presentado el 16 de diciembre de 2024, para solicitarnos que revoquemos la *Resolución* emitida el 14 de noviembre de 2024 y notificada al próximo día, por el Tribunal de Primera Instancia, Sala Superior de Carolina ("TPI"). En dicha *Resolución*, el TPI declaró No Ha Lugar una *Solicitud de Reconsideración* y *Demanda Enmendada* del Peticionario. De tal manera, dispuso que las controversias a dilucidarse en el juicio en su fondo estarían limitadas a las contenidas en la *Demanda.*

Examinado el recurso y por las razones que expondremos a continuación, **expedimos** el auto de *certiorari* y **confirmamos** la Resolución recurrida.

**I.**

Los hechos de la presente causa de acción se remontan al 4 de junio de 2021, cuando el Sr. Rodríguez sufrió un accidente de trabajo al caerle un montacargas "Pallet Jack" sobre el pie derecho.

No es sino hasta el 11 de junio de 2021 que el Sr. Rodríguez fue atendido en la Corporación del Fondo del Seguro del Estado ("CFSE" o "Recurrida"), Oficina Regional de Carolina, donde le diagnosticaron *crush injury* (aplastamiento) del pie derecho con edema, hinchazón, disminución de movimiento y dificultad para ambular. Surge del expediente que, el Informe Médico Inicial y Examen Físico fue realizado por la Dra. Cenia Pérez Fernández a las 12:45pm del 11 de junio de 2021.

Al momento de ser atendido, el Sr. Rodríguez, quien reportó un dolor de intensidad "9" y se encontraba en silla de ruedas por no poder caminar, informó que tenía historial de diabetes mellitus, hipertensión arterial, hipotiroidismo y neuropatía diabética. Su condición fue clasificada Categoría II (Urgente). Allí también se le realizaron radiografías del pie derecho, cuyos estudios fueron interpretados como negativos para fracturas.

Así las cosas, el Sr. Rodríguez fue dado de alta a la 1:12pm del mismo día, con instrucciones de descanso y una receta de medicamentos antiinflamatorios, relajantes musculares y antibióticos, prolongando su tratamiento hasta el 18 de junio de 2021. También, se coordinaron las citas de seguimiento en la CFSE y se le impartieron instrucciones de acudir a la Sala de Emergencia del Hospital Industrial o la facilidad médica más cercana a su hogar si los síntomas persistían o empeoraban.

Dado que la condición del pie derecho del Sr. Rodríguez continuó empeorando, el 15 de junio de 2021 acudió a Sala de Emergencias del Hospital Auxilio Mutuo, donde le diagnosticaron *right foot fracture and right foot celullitis secondary to a crush injury*. En vista de lo anterior, el paciente fue trasladado en ambulancia al Hospital Industrial, por cuanto necesitaba evaluación de un ortopeda, entre otros tratamientos. Ese mismo día, fue admitido en el Hospital Industrial por absceso y celulitis en el pie derecho.

Entre los hallazgos del examen físico realizado a la llegada al Hospital Industrial, se documentó ampollas de carácter purulento en el dorso del pie derecho, eritema y edema en el aspecto dorsal desde el segundo al cuarto dedo. Los siguientes días, el absceso se tornó fluctuante y con crepitantes a la palpación.

El 21 de junio de 2021, mientras se encontraba hospitalizado en el Hospital Industrial, tuvo que ser intervenido quirúrgicamente con incisión y drenaje. Nuevamente, el 24 de junio de 2021, fue sometido a una segunda cirugía para remover parte de la fascia plantar infectada.

Finalmente, fue dado de alta el 6 de agosto de 2021, luego de 52 días hospitalizado. Posterior a su alta, el Sr. Rodríguez continuó recibiendo tratamiento en la Clínica de Cuidado de la Piel hasta el 14 de octubre de 2021 y en las clínicas Externas de la CFSE hasta el 14 de abril de 2023, cuando le dieron de alta de la CFSE.

El 5 de junio de 2022, el Sr. Rodríguez incoó una Demanda por daños y perjuicios e impericia médica ante el Tribunal de Primera Instancia, Sala de Carolina, en la cual imputó negligencia a la CFSE por el diagnóstico y tratamiento negligente que recibió el 11 de junio de 2021 en la Oficina Regional de Carolina En esta, reclamó por los daños que pudieron "haberse evitado de habérsele brindado un tratamiento oportuno y correcto desde su primera visita al

CFSE"[1]. La demandada y aquí recurrida presentó su contestación a la Demanda oportunamente.

Luego de varios incidentes procesales, el 23 de abril de 2024, las partes presentaron en conjunto un *Informe de Conferencia con Antelación a Juicio*. Seguidamente, la *Conferencia con Antelación a Juicio* fue celebrada el 2 de mayo de 2024 y su minuta notificada el 15 de julio de 2024. En esta, surgió un argumento clave para nuestros propósitos, pues se discute por primera vez el asunto relacionado a la alegada impericia médica que hubo en el Hospital Industrial, la cual, aunque no surge de la Demanda, sí se trajo a colación en el Informe de Conferencia con Antelación a Juicio y ha sido objeto del descubrimiento de prueba. En consecuencia, el Peticionario manifestó que "estará solicitando la enmienda a la demanda y expondrá en la moción las razones por las cuales no causa ningún tipo de perjuicio y tampoco ha atrasado ni atrasará los procedimientos"[2]. El TPI expresó estar conforme para evaluar su moción de enmienda a la *Demanda*.

No obstante, el 14 de mayo de 2024, el Sr. Rodríguez mediante moción informó que "luego de haber evaluado detenidamente el expediente del caso que nos ocupa, el Peticionario sostiene que tal enmienda es innecesaria"[3]. Así las cosas, el 5 de septiembre de 2024, la CFSE presentó una *Moción Solicitando se Limiten las Controversias a las Alegaciones de la Demanda*, en la cual solicitó que las alegaciones sobre impericia médica se limiten al tratamiento médico ofrecido en la Oficina Regional de Carolina, ya que las alegaciones no quedan enmendadas automáticamente por el descubrimiento de prueba o los informes periciales, como sostiene el Peticionario[4]. Oportunamente, el Sr. Rodríguez presentó oposición

---

[1] Apéndice 1, pág. 4.
[2] Apéndice 10, pág. 76.
[3] Apéndice 6, pág. 63.
[4] Apéndice 11, pág. 78.

al entender que era innecesario enmendar la Demanda, pero el TPI ordenó que se limitaran las controversias a las alegaciones sobre impericia médica en la Oficina Regional de Carolina, sin expresar fundamento.

Ante el dictamen, el 16 de octubre de 2024, el Peticionario presentó una reconsideración para señalar nuevamente que la enmienda a la Demanda era innecesaria y, a su vez, incluyó la Demanda enmendada en la alternativa de que no se acogiera la primera súplica. Sometida la oposición a la reconsideración, el 15 de noviembre de 2024 fue notificada la *Resolución* del TPI declarando No Ha Lugar la solicitud de reconsideración y enmienda de la *Demanda*.

Inconforme aun, el 16 de diciembre de 2024, el Sr. Rodríguez recurre ante nos mediante recurso de *certiorari* en el que solicita que revoquemos la determinación del TPI para que se permita la enmienda a la *Demanda*, de modo que las controversias a dilucidarse puedan incluir las alegaciones de impericia médica relacionadas al Hospital Industrial.

En su recurso, el peticionario señala los siguientes errores:

PRIMER ERROR: Erró el Tribunal de Primera Instancia al interpretar restrictivamente las alegaciones de la demanda inicial, limitándolas indebidamente al evento del 11 de junio de 2021 y dejando desprovisto al demandante de remedios alegados y reclamados.
SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al denegar la solicitud oportuna de enmienda a la demanda, limitando injustificadamente el derecho del demandante a ser resarcido por los daños sufridos.
TERCER ERROR: Erró el Honorable Tribunal de Primera Instancia al abusar de su discreción y emitir la determinación impugnada limitando las alegaciones de la demanda sin parámetros claros sobre su alcance y ámbito violando los derechos constitucionales del Demandante a la igual protección de las leyes y al debido proceso de ley.

El 10 de enero de 2025, emitimos *Resolución* en la cual le concedimos a la parte recurrida un término para presentar su alegato en oposición. No obstante, a solicitud de dicha parte, el 23 de enero de 2025, concedimos un término adicional. Además, se le

informa que, de expirarse el término notificado, se procederá a atender el recurso sin el beneficio de su comparecencia. Así pues, la CFSE comparece el 30 de enero de 2025.

Con el beneficio de la comparecencia de las partes, procedemos a exponer el derecho atinente a la controversia que nos atañe.

## II.

### -A-

El *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[5]. La expedición del auto de *certiorari* descansa en la sana discreción del tribunal, así nuestro más alto foro ha señalado que "[l]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos"[6]. Ahora bien, ejercer la discreción concedida no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho[7]. Al respecto, la Regla 52.1 de Procedimiento Civil de 2009, enumera aquellos incidentes procesales susceptibles de revisión mediante el auto de *certiorari*[8]. Esta Regla señala que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

---

[5] *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723 (2016).
[6] *Íd.*
[7] *Íd.*
[8] *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593-94 (2011).

Ahora bien, si se determina que el recurso presentado cumple con alguna de las disposiciones de la precitada regla, entonces debemos pasar a una evaluación del auto a través de los criterios que establece la Regla 40 de nuestro Reglamento, para considerar si se expedirá el auto discrecional del *certiorari*. Estos criterios son:

A.    Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B.    Si la situación de hechos planteada es la más indicada para el análisis del problema.
C.    Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D.    Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E.    Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F.    Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G.    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**-B-**

Nuestra Regla 13.1 de las de Procedimiento Civil[9] contiene lo relevante respecto a las enmiendas a las alegaciones. En lo pertinente, esta lee como sigue:

Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad.

Según la R. 13.1, *supra,* el permiso para enmendar las alegaciones se concederá liberalmente cuando la justicia así lo requiera. Sin embargo, la liberalidad no puede implicar perjuicio a la parte contraria o demora indebida en el proceso por una solicitud formulada en una etapa avanzada del mismo[10]. Al respecto, en

---

[9] 32 LPRA Ap. V, R. 13.1.
[10] *Torres Cruz v. Municipio de San Juan,* 103 DPR 217 (1975).

*Epifanio Vidal, Inc. v. Suro*[11], nuestro Tribunal Supremo expresó lo siguiente:

> La liberalidad de la Regla 13.1 para conceder enmiendas no es infinita; está condicionada por un juicioso ejercicio de discreción que ha de ponderar por el momento en que se solicitan, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda, el perjuicio que la misma causaría a la otra parte y hasta la naturaleza y méritos intrínsecos de la defensa que tardíamente se plantea.

El criterio fundamental para medir las solicitudes de enmiendas tardías es el perjuicio que la enmienda le causa a la parte oponente. Sobre dicho criterio, en *Colón Rivera v. Wyeth Pharm.*[12], el Alto Foro expresó que:

> [E]l factor de mayor relevancia es el perjuicio indebido que la enmienda pueda causar a la parte contraria, pero ello no significa que los demás factores no deban ser considerados. Ocurre perjuicio indebido cuando la enmienda: 1) cambia sustancialmente la naturaleza y alcance del caso, convirtiendo la controversia inicial en tangencial y/o 2) obliga a la parte contraria a incurrir en nuevos gastos, alterar su estrategia en el litigio o comenzar nuevo descubrimiento de prueba.

### III.

En síntesis, el Peticionario solicita que revoquemos la *Resolución* del TPI para que pueda dilucidarse las alegaciones sobre impericia médica relacionadas al Hospital Industrial en el juicio en su fondo y no solamente las alegaciones relacionadas a la negligencia en la Oficina Regional de Carolina. Su fundamento es que el TPI interpretó restrictivamente las alegaciones de la *Demanda* limitándolas únicamente al evento del 11 de junio de 2021 relacionado a la Oficina Regional de Carolina y que denegó la solicitud oportuna de enmienda a las alegaciones de la demanda injustificadamente.

Sin embargo, posterior a la *Conferencia con Antelación a Juicio*, el peticionario presentó una *Moción en Solicitud de Reconsideración* en la cual expresó que, "luego de haber evaluado

---

[11] *Epifanio Vidal, Inc. v. Suro*, 103 DPR 793 (1975).
[12] *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184 (2012).

detenidamente el expediente del caso que nos ocupa, **la Parte Demandante sostiene que tal enmienda es innecesaria**"[13]. No obstante, de una lectura cuidadosa y liberal de la Demanda, surge que las alegaciones se limitan exclusivamente a la impericia médica con relación a lo ocurrido en la Oficina Regional de Carolina. Es decir, tomados como un conjunto los párrafos 15 al 20 de la Demanda (en los que se imputa la alegada negligencia), podemos concluir que la negligencia allí imputada es relacionada a la Oficina Regional de Carolina y no incluye al Hospital Industrial[14].

El descubrimiento de prueba no enmienda implícitamente las alegaciones de una demanda, más bien, provee una oportunidad para enmendar las alegaciones según lo descubierto. Por tanto, el Peticionario tuvo oportunidad de enmendar la demanda desde la fecha en que obtuvo la información pertinente durante dicho proceso, pero no lo hizo.

---

[13] Apéndice 6, pág. 63 (énfasis suplido).

[14] Apéndice 1, págs. 3-4. A continuación, transcribimos los párrafos pertinentes de la Demanda (énfasis suplido):

15. Los daños sufridos por el Demandante . . . se debieron a la negligencia, falta de cuidado, circunspección y prevención de los Demandados del caso de epígrafe, **quienes lo atendieron el 11 de junio de 2021 en la CFSE, Oficina Regional de Carolina**. Todos dichos demandados responden solidaria y/o vicariamente por los daños sufridos por [el Sr. Rodríguez] y por los Demandantes. Debido a tal negligencia, el paciente no recibió el estándar de cuidado médico necesario para identificar y manejar su condición mientras fue atendido en la CFSE, Oficina Regional de Carolina, lo que le ocasionó —y aún le ocasiona— intensos daños físicos, angustias mentales y pérdidas económicas.

16. Todos los demandados —sus médicos, enfermeras y personal— fallaron al dar de alta prematuramente al paciente (sin haber consultado a ningún especialista), al no realizar los referidos a los especialistas correspondientes (a pesar de que la condición del paciente así lo requería), al no reconocer y/o no tratar adecuadamente la condición que estaba sufriendo el paciente, y al no brindarle al paciente el seguimiento y el tratamiento oportunamente, lo que provocó todos los daños sufridos por este. También los demandados —sus médicos, enfermera y personal— fueron negligentes al no identificar a tiempo la fractura que había sufrido el demandante como consecuencia de su accidente laboral. El tratamiento tardío y las consecuentes complicaciones de la enfermedad resultaron en los extensos y permanentes daños del paciente.

17. Como resultado directo de estas desviaciones de los estándares esperados en pacientes con presentación similar, el Demandante . . . sufrió un riesgo excesivo y peligroso al casi perder su extremidad (pie derecho), **por lo que tuvo que ser sometido a varias cirugías y una prolongada hospitalización en el Hospital Industrial; lo que pudo haberse evitado de habérsele brindado un tratamiento oportuno y correcto desde su primera visita al CFSE**. Esto, a su vez, ha causado el prolongamiento del proceso de rehabilitación del Demandante; lo que ha aumentado su sufrimiento y sus daños.

18. Las acciones y omisiones de los codemandados antes descritos se distanciaron de los principios que rigen la mejor práctica de la ciencia médica moderna, causando los daños sufridos por la Parte Demandante.

19. La Parte Demandada es responsable, además, por haber sido negligente en la selección y/o al extenderle privilegios a los doctores que atendieron al paciente, así como por no proveer y/o implementar un protocolo adecuado y efectivo que previniera y/o evitara el daño ocasionado a la Parte Demandante. Además, dichos Demandados fueron negligentes al no proveer empleados, técnicos y/o personal de enfermería capacitado para atender la condición del paciente.

20. Las Compañías de Seguro X, Y, Z, y las personas naturales y jurídicas John Doe y Jane Roe, todas de nombres desconocidos, son responsable de los daños reclamados por contribuir con su negligencia a ocasionar los mismos.

Acorde con nuestro ordenamiento procesal, la liberalidad con la que debe concederse el permiso para enmendar las alegaciones no es infinita, más bien está sujeta a una serie de factores, a saber, debe evaluarse: (1) si el momento en que se solicitan es oportuno; (2) la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda; (3) el perjuicio que la misma causaría a la otra parte, y (4) la naturaleza y méritos intrínsecos de la defensa que tardíamente se plantea[15].

Aplicando estos factores jurisprudenciales a los hechos del caso, hacemos constar nuestras conclusiones. El momento en que se solicita la enmienda a la demanda es una etapa procesal hartamente avanzada, pues se trata de una solicitud luego de haber celebrado la Conferencia con Antelación a Juicio, lo cual la convierte en una solicitud considerablemente tardía. Más aún, la razón en la demora o inacción del Peticionario no se justifica, pues tuvo suficiente oportunidad para promover su enmienda: primero, desde que produjo los informes periciales durante el descubrimiento de prueba y, segundo, inmediatamente luego de la Conferencia con Antelación a Juicio, la cual fue celebrada el 2 de mayo de 2024, donde se suscitó la controversia y el Peticionario expresó que "estará solicitando [dentro de cinco días] la enmienda a la demanda y expondrán en la moción las razones por las cuales no causa ningún tipo de perjuicio y tampoco ha atrasado ni atrasará los procedimientos"[16]. Sin embargo, en la moción aludida, que data del 14 de mayo de 2024, el Peticionario sostuvo que tal enmienda era innecesaria[17], a pesar de que de una lectura liberal de la Demanda se desprende que la enmienda sí era necesaria.

---

[15] *Epifanio Vidal, Inc. v. Suro, supra.*
[16] Apéndice 10, pág. 76.
[17] Apéndice 6, pág. 63.

Para analizar el perjuicio indebido que la enmienda pueda causar a la parte contraria, hay que examinar si la misma cambia sustancialmente la naturaleza y alcance del caso y/o si obliga a la parte contraria, entre otras cosas, a alterar su estrategia en el litigio o comenzar un nuevo descubrimiento de prueba[18]. Sobre este punto, arguyó la Recurrida que enmendar la demanda en esta etapa avanzada del proceso causaría que se abriera el descubrimiento de prueba nuevamente, "**ya que existen médicos que dieron tratamiento al demandante en el Hospital Industrial y renunciaron a traerlos en la Conferencia con Antelación a Juicio**"[19]. Nada expresó sobre este asunto el Peticionario en su recurso de *certiorari*, salvo ciertas alegaciones generales en cuanto a la inexistencia de perjuicio al admitir la enmienda a la Demanda[20].

Por último, debemos recalcar que el auto de *certiorari* es un remedio procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal de menor jerarquía. Ante estas consideraciones, entendemos que el TPI actuó correctamente al no permitir la enmienda a las alegaciones de la demanda y, consecuentemente, limitar las controversias a dilucidarse en el juicio. Por lo cual, resolvemos que el TPI no cometió el error señalado. Por lo tanto, confirmamos la *Resolución* impugnada.

**IV.**

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari* y ***confirmamos*** la *Resolución* recurrida.

Notifíquese.

---

[18] *Colón Rivera v. Wyeth Pharm.*, *supra*.
[19] Apéndice 18, pág. 91 (énfasis suplido).
[20] Véase, *Petición de certiorari,* págs. 17-18.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones